UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MEDPACE, INC., | : | Case No. 1:12-cv-179 |
| | : | |
| Plaintiff | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| BIOTHERA, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER: (1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 42); and (2) DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 46)**

This civil action is before the Court on: (1) Biothera's motion for partial summary judgment (Doc. 42) and the parties' responsive memoranda[1] (Docs. 43, 44); and (2) Medpace's cross-motion for partial summary judgment (Doc. 46), and the parties' responsive memoranda (Docs 49, 52).

---

[1] Medpace seeks oral argument on Defendant's motion for partial summary judgment. (Doc. 43). Local Rule 7.1(b)(2) provides for oral argument where it "is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." Here, the Court finds that the pleadings are clear on their face, and that oral argument is not necessary. *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, at *7 (S.D. Ohio July 27, 2006) (C.J. Dlott) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument.").

## I. BACKGROUND FACTS

Biothera[2] maintains that it owns, and has always owned, all case report forms, study files, and other data related to the clinical trials of its cancer drug, Imprime PGG® ("Imprime").

In 2009, Biothera hired Medpace[3] to manage the clinical trials of Imprime. However, Medpace allegedly failed to live up to its contractual obligations, and in February 2012, Biothera terminated its Master Services Agreement ("MSA") with Medpace and assumed direct responsibility for managing the trials. After terminating the MSA, Biothera asked Medpace – and Medpace refused – to turn over all documents and data related to the Imprime trials (hereinafter the "Trial Property").

On November 6, 2012, this Court granted Biothera's motion for preliminary injunction and ordered Medpace to return the Trial Property. (Doc. 36). Biothera now moves for partial summary judgment on its conversion counterclaim. Medpace filed a cross-motion for partial summary judgment on the same conversion claim.

## II. UNDISPUTED FACTS[4]

1. On or about April 29, 2009, Biothera and Medpace entered into a Master Services Agreement ("MSA"). (Doc. 42, Ex. 3 at ¶ 2; Attach. A).

---

[2] Biothera is a privately held biotechnology company in the business of developing and obtaining regulatory approval for the marketing and sale of pharmaceutical products, biological products, and medical devices. (Doc. 5 at ¶ 2; Doc. 34, Ex. 3 at 16-17).

[3] Medpace is an Ohio corporation and full service global contract research organization that provides services relating to the design and execution of clinical development programs involving drugs, biologics, and medical devices. (Doc. 41, Ex. B at ¶ 3).

[4] *See* Doc. 42, Ex. 2; Doc. 43, Ex. 1; Doc. 46, Ex. 2; and Doc. 50.

2

2. Biothera, as sponsor, hired Medpace to provide clinical trial services (the "Services"). (Doc. 42, Ex. 3 at ¶ 2; Attach. A).

3. Following the execution of the MSA, Biothera and Medpace entered into a Series of Task Orders and Task Order Amendments and a Consulting Agreement, which set forth the parties' responsibilities with respect to performance of the Services and payment for the Services. (Doc. 43, Ex. B at ¶ 4).[5]

4. Medpace and Biothera entered into four Task Orders numbered PGG821 (BT-CLPGG-CRC0821), PGG1AVA (BT-CL-PGG-LCA0821), PGG2ERB (BT-CL-LCA0822), BTCRC31 (BT-CL-PGG-CRC1031). (Doc. 6 at ¶ 7).

5. On February 29, 2012, Biothera provided written notice to Medpace that, pursuant to Section 6 of the MSA, it was terminating the MSA. (Doc. 42, Ex. 3 at ¶ 7; Attach. D).

6. On March 9, 2012, Biothera requested in writing that Medpace comply with its obligations under the MSA to return certain materials and information constituting "Clinical Materials" and "Trial Property" (collectively, the "Trial Property") to Biothera. (Doc. 42, Ex. 3 at ¶ 8; Attach. E).[6]

7. On March 16, 2012, Biothera made a second written request for the return of the Trial Property. (Doc. 42, Ex. 3 at ¶ 9; Attach. F).

8. On September 10, 2012, Biothera sent Medpace a letter requesting to meet and confer regarding Medpace's obligation to return the Trial Property. (Doc. 42, Ex. 3 at ¶ 11; Attach. G).

9. On September 12, 2012, counsel for Medpace sent a letter refusing to return the Trial Property to Biothera. (Doc. 42, Ex. 3 at ¶ 12; Attach. H).[7]

---

[5] Biothera admits that the MSA, Task Orders, Task Order Amendments, and a Consulting Agreement are among the documents that set forth the parties' responsibilities. Biothera denies that these documents are the exclusive source of the parties' responsibilities with respect to each other.

[6] While Medpace admits that counsel for Biothera sent the March 9, 2012 letter, Medpace denies that it had any obligations under the MSA to return the trial data to Biothera. (Doc. 49, Ex. 1).

[7] Medpace admits that it sent the September 12, 2012 letter, but denies that the letter "refus[ed] to return the trial property to Biothera," as the letter clearly states that "[a]s we have repeatedly told Biothera, Medpace is more than willing to turn over this trial data as soon as Biothera pays for it." (Doc. 49, Ex. 1).

3

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### IV. ANALYSIS

**A. Conversion**

To prevail on a claim for conversion under Ohio law, Biothera must prove: "(1) that it owned or had the right to control the property at the time of conversion, (2) the [opposing party's] wrongful act or disposition of [Biothera's] property rights, and (3) damages." *Pelmar USA, LLC, v. Mach. Exch. Corp.*, 976 N.E.2d 282, 286 (Ohio

4

App. Aug. 22, 2012). Because Medpace came into possession of the property lawfully, Biothera must also establish that it demanded return of the property and that Medpace refused to deliver it. *Alexander v. Motorists Mut. Ins., Co*., No. C-110836, 2012 Ohio App. LEXIS 3454, at *3 (Ohio App. Aug. 29, 2012).

*First*, pursuant to Section 9.1 of the MSA, Biothera maintains that it owns and has the right to possess the Trial Property:

> [a]ll materials, documents, data, software and information of every kind and description supplied to MEDPACE by [Biothera] or any of [Biothera's] clients, or prepared, developed, or generated by MEDPACE pursuant to this Agreement (except for the pre-existing Medpace procedural manuals, personal data, methods, procedures, and policies) are and shall be the sole and exclusive property of [Biothera].

*Second*, Medpace refused to return the Trial Property, despite Biothera's requests.

*Third*, Biothera maintains that Medpace's refusal to return the Trial Property has caused and continues to cause Biothera significant damages, including fees and costs paid to recreate the Trial Property.

Medpace disputes the first and third elements.

5

**B. Ownership of the Trial Property**

Medpace maintains that Section 6.4 of the MSA,[8] which governs Biothera's payment obligations for cancelled Task Orders, justifies Medpace's refusal to turn over the Trial Property.

However, even if Biothera breached Section 6.4 by failing to pay Medpace amounts due, the MSA still requires Medpace to turn over the Trial Property. Medpace can and did bring a claim against Biothera for breach of contract, which will be resolved by this litigation. However, the MSA does not permit Medpace to withhold Biothera's property. The MSA unambiguously provides that, even in the event of Biothera's breach, "MEDPACE shall transfer to [Biothera] all case report forms, study files, and other data and information in any and all forms available, including electronic format and computer files and programs, in MEDPACE's possession." MSA § 6.3.

Therefore, the Court finds that Biothera owns and has a right to possess the Trial Property and that Medpace was obligated to return its Trial Property upon request.

---

[8] "In the event of any termination of a Task Order before completion, SPONSOR agrees to pay MEDPACE for all Services rendered pursuant to the unfinished Task Order prior to such termination and any non-cancelable expenses incurred in connection with MEDPACE's performance of Services thereunder. As soon as reasonably practicable following receipt of a termination notice, MEDPACE shall submit an itemized accounting of Services performed, expenses incurred pursuant to performance of the Services, non-cancelable expenses incurred by MEDPACE relating to an unfinished Task Order, and payments received in order to determine a balance to be paid by either Party to the other. Such balance shall be paid within 30 days of receipt of such an itemized accounting by SPONSOR." MSA § 6.4.

6

**C. Duty of Care**

Medpace's conduct violated its common law duty as bailee of Biothera's property. *Grand Leasing & Rental v. Cooley*, No. 69983, 1996 Ohio App. LEXIS 3656, at *2 (Ohio App. Aug. 29, 1996) ("A mutual benefit bailment gives rise to common-law duties to exercise ordinary care in protecting and keeping safe bailed goods, and to redeliver the subject of the bailment."). The MSA created a bailment relationship between the parties and Medpace, as a bailee, violated an independent, common-law duty by failing to return the bailed property upon the bailor's request. *Grand Leasing & Rental*, 1996 Ohio App. LEXIS 3656 at 2 ("A mutual benefit bailment gives rise to common-law duties to exercise ordinary care in protecting and keeping safe bailed goods, and to redeliver the subject of the bailment."). When a bailor demands and a bailee refuses to return the bailed property, a cause of action in tort accrues in favor of the bailor. 8 Ohio Jur. 3d Bailments § 20 (2012).[9]

Here, the MSA and Task Orders provided that Biothera, on a continuing basis, would deliver to Medpace – either directly or through its study sites or other third-party agents – documents and other materials (i.e., personal property) related to the Imprime trials, and Medpace would safeguard, organize, and otherwise improve those materials. The MSA also required Medpace to return the Trial Property to Biothera upon termination of the MSA. MSA §§ 6.2-6.3. Therefore, Medpace became a bailee of

---

[9] Medpace argues that this is a new theory and therefore cannot be plead. However, the Court determines that although not captioned as "breach of bailment," Biothera's claim for "Breach of Contract (Specific Performance)" functionally pleads a claim for breach of bailment.

7

Biothera's property pursuant to the MSA. The MSA was not a contract for the sale of goods and did not confer title of the Trial Property on Biothera. Instead, the MSA simply acknowledged that the Trial Property provided to (and even to the extent improved by) Medpace was and would always remain the exclusive property of Biothera. Biothera would own the Trial Property even absent the MSA. The existence of a contractual duty does not immunize tortious conduct, if the conduct also violates a separate legal duty. *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976) (applying Ohio law).

As a bailee, Medpace had a duty to return the bailed property upon demand, but it refused. By breaching this duty, Medpace became liable to Biothera in tort. *Tomas v. Nationwide Mut. Ins. Co.*, 607 N.E.2d 944, 947 (Ohio App. 1992). "Where a bailor has proven a bailment and a subsequent refusal of the bailee to return the goods on demand, a *prima facie* case of conversion has been created." *Welch v. Smith*, 717 N.E.2d 741, 744 (Ohio Ct. App. 1998).[10]

### D. The Conversion Claim is Distinct From the Contract Claim

Medpace argues that Biothera cannot recast its breach of contract claim (breach of the MSA) as a tort claim (conversion).

---

[10] *See also Foliano v. Dussault Moving, Inc.*, No. 82562, 2003 Ohio App. LEXIS 3919, at *5 (Ohio App. Aug. 21, 2003) ("[A] conversion claim, if proven, renders the limitation of liability clause [in a bailment contract] ineffective.").

Under Ohio law, "the existence of a contract action…[generally] excludes the opportunity to present the same case as a tort claim…A tort action will lie only if a party breaches a duty separate and distinct from the duties that arise under the contract." *Ruggles v. Bulkmatic Transp. Co.*, No. C2-03-617, 2004 U.S. Dist. LEXIS 30588, at *22 (S.D. Ohio June 23, 2004) (finding that plaintiff's fraud and negligent misrepresentation claims failed as a matter of law because the duties in question arose under the parties' contract and there were no tort damages that were distinct from the breach of contract damages). Additionally, to recover under a tort theory, "Ohio law requires that the alleged tort damage must be in addition to the alleged damage resulting from the breach of contract." *Id.* at 26-27.

Ohio courts have explicitly and repeatedly applied the rule against double recovery for both breach of contract and for intertwined tort claims to bar conversion claims altogether. *See, e.g., Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 437 F. App'x 381, 385 (6th Cir. 2011) (affirming the district court's dismissal of the conversion claim and holding that because "the conversion claim is based on the same actions as the contract claim" that the "conversion claim is therefore duplicative of the breach of contract claim and is not permitted under Ohio law.").[11]

---

[11] *See also Nat'l Strategies, LLC, v. Naphcare*, No. 5:10cv974, 2011 U.S. Dist. LEXIS 85841, at 847-48 (N.D. Ohio Aug. 4, 2011) (granting summary judgment for defendant on plaintiff's conversion claim because "Plaintiff has not advanced evidence on the record from which a reasonable jury could find a conversion claim independent of Plaintiff's breach of contract claim.").

9

Medpace further contends that Biothera's conversion claim is precluded by a separate doctrine barring "intertwined claims" based on this Court's decision in *ITS Fin., LLC v. Advent Fin. Servs., LLC*, 823 F. Supp. 2d 772, 781-82 (S.D. Ohio 2011). However, Medpace's argument is misplaced. After observing that the economic loss doctrine is traditionally limited to negligence claims, the Court held in *ITS Fin.* that the economic loss doctrine did not bar the fraud claim, because it sought damages distinct from those caused by the breach of contract. *Id*. at 783.[12] This concept is a core principle of the economic loss doctrine. (*See infra*, Section IV.E). In fact, even the cases Medpace cites acknowledge that this requirement is founded in the economic loss doctrine.[13]

However, "[c]onversion is essentially a tort action[, but] it may arise out of violation of contractual obligations." *Marshall v. Neff*, 1928 Ohio Misc. LEXIS 1161, at *2 (Ohio Mun. Feb. 23, 1928). A party's intentional conduct is not sheltered from tort liability simply because it also violates a separate contractual obligation. The existence of a contractual duty does not immunize tortious conduct if the conduct also violates a separate legal duty, as in the instant case.

---

[12] Moreover, all of the cases cited in *ITS Fin*. regarding factual intertwinement dealt with the specific issue of whether a contract-related fraud claim can be brought together with a breach-of-contract claim, which are not the facts in the instant case.

[13] *See, e.g, Ebenisterie Beaubois Ltee v. Marous Bros. Constr., Inc.,* No. 02cv985, 2002 U.S. Dist. LEXIS 26625, at *30 (N.D. Ohio Oct. 17, 2002) ("Where no independent duty is alleged, the economic loss doctrine prevents a plaintiff from recovering in tort where the only damages alleged are direct or indirect losses arising from the breach of contract…Thus, to sustain a [tort] claim, the plaintiff must allege damages, in addition to those alleged for breach of contract, caused by the alleged [tort].").

Here, Biothera's conversion claim is not duplicative of its breach of contract claim and is therefore properly alleged.[14] (*See supra*, Section IV.C.&D.).

### E. Economic Loss Doctrine

Medpace also argues that the conversion claim is barred by the economic loss doctrine.

The economic loss doctrine serves an important purpose: parties should not be permitted to transform a claim of contractual non-performance into a tort claim. *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 211 (Ohio 1990) (observing that negligence law "is not designed…to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement"). However, the economic loss doctrine does not bar Biothera's conversion claim because the doctrine does not apply to intentional torts. *Eysoldt v. Proscan Imaging*, 957 N.E.2d 780, 784-85 (Ohio App. 2011) (holding that the economic loss doctrine did not bar intentional torts, including conversion). *See also Gurry v. C.P.*, 972 N.E.2d 154, 157-58 (Ohio App. 2012) (noting that conversion is an intentional tort).

Accordingly, the economic loss doctrine is inapplicable to the instant case.

---

[14] Medpace argues that *Wright v. Bank of America*, No. 12-13663, 2013 U.S. App. LEXIS 3301 (6th Cir. 2013), is instructive in this matter. But *Wright* simply reaffirmed that a party cannot assert a tort claim which is duplicative of a breach of contract claim.

11

F.  Damages[15]

Biothera seeks to recover the direct and indirect damages caused as a result of Medpace's nine-month-long refusal to return the Trial Property, including costs incurred, where possible, to recreate portions of the Trial Property. Biothera claims that it incurred costs and fees to recreate portions of the Trial property from third-party sources. (Doc. 42, Ex. 3 at ¶ 18). In fact, Biothera maintains that it has incurred invoices from these vendors of approximately $3 million. (Doc. 49, Ex. 1 at ¶ 3).

Medpace argues that consequential damages are not available on a conversion claim. However, the case Medpace cites to support this proposition, *McCaughey v. Garlyn Shelton, Inc.*, Nos. 1:02cv732, 1:02cv767, 2008 U.S. Dist. LEXIS 2609, at *23 (S.D. Ohio Jan. 14, 2008), was explicitly predicated on the fact that the plaintiff "has not demonstrated that Ohio case law…would permit additional consequential damages." *Id.* That is not the case here. *See, R&S Distrib., Inc., v. Hartge Smith Nonwovens, LLC*, No. C-090100, 2010 Ohio App. LEXIS 3414, at 8 (Ohio App. Aug. 27, 2010) (holding that conversion damages can include the loss of capital investment or income caused by the conversion).

Medpace's argument focuses on the technical distinction between replevin and conversion. (Doc. 43 at 10). However, both intentional torts address the wrongful

---

[15] For purposes of the motion for summary judgment, it is sufficient for Biothera to establish the existence of some damages, the precise amount of which to be proven at trial. In contrast, for Medpace to prevail on its motion, it would need to establish as a matter of law that Biothera is entitled to no damages, a finding the law does not countenance here.

12

detention of personal property. They differ only in terms of the primary remedy provided: replevin provides for the return of wrongfully detained property, while conversion provides damages in lieu of the property. 18 Ohio Jur. 3d Conversion & Replevin § 48. Both replevin and conversion allow for other direct and consequential damages caused by the wrongful detention. *See, e.g., R&S Distrib.*, 2010 Ohio App. LEXIS 3414 at 7 (holding that conversion damages can include the loss of capital investment or income caused by the conversion); *Ace Vending Co. v. Davidson*, 457 N.E.2d 341, 343 (Ohio App. 1982) (observing that damages for lost profits in a replevin action are available if shown with reasonable certainty).

Medpace also suggests that Biothera has not demonstrated that it needed to recreate, where possible, the Trial Property. (Doc. 46 at 5-16).[16] The Court disagrees as the undisputed facts evidence that Biothera required the clinical trial records both to attract potential acquirers and, eventually, obtain regulatory approval of Imprime. (*See* Doc. 36; Doc. 34, Ex. 2 at ¶ 11) ("CROs ordinarily work on behalf of the development-stage pharmaceutical companies to create data that is the property of the development-stage company from the moment of its creation, regardless of the timing of payments … Furthermore it is well understood that the data is to be provided immediately to the development-stage pharmaceutical companies when the study has terminated for any

---

[16] While the measure of damages in a conversion case is usually the market-value of the goods at the time of conversion, "the owner must be compensated for the loss sustained by reason of the wrongful conversion of his property." *Rogers v. Standard Steel Castings Co.*, 16 Ohio App. 474, 480 (Ohio App. June 24, 1922).

13

reason. This is to ensure protection of the subjects and to enable additional studies. Obtaining the date on termination of the study for any reason is critical because of the need to continue with additional studies and to prepare the FDA submission for product approval.").

While there are disputed issues of fact as to the precise amount of damages incurred as a result of the conversion, there is no support for a finding that Biothera's damages are speculative. *Cf. Ace Hardware Corp. v. Marn, Inc.*, No. 06cv5335, 2008 U.S. Dist. LEXIS 84709, at *18 (N.D. Ill. Sept. 16, 2008) ("The problem is not that the damages are 'undetermined,' but rather that Defendants have failed to provide tangible evidence that they suffered any damages 'to a reasonable degree of certainty'…").

Accordingly, the Court finds that Biothera: (1) owned or had the right to control the Trial Property at the time of conversion; and (2) Medpace's wrongful act or disposition of Biothera's property rights; (3) resulted in damages. Therefore, Biothera prevails as a matter of law on its counterclaim for conversion.

## V. CONCLUSION

Accordingly, for the foregoing reasons, Biothera's motion for partial summary judgment (Doc. 42) is **GRANTED** and Medpace's cross-motion for partial summary judgment (Doc. 46) is **DENIED**.

**IT IS SO ORDERED**.

Date: 4/4/13                                                                 */s/ Timothy S. Black*
                                                                             Timothy S. Black
                                                                             United States District Judge